**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

NORMAN CRONEY,

|  |  |  |
|---|---|---|
|  | Plaintiff, | No. 9:23-CV-01188 |
| v. |  | (DNH/PJE) |

D. RUSSELL, D. MYATT,

                              Defendants.

---

**APPEARANCES:**                              **OF COUNSEL**:

Norman Croney
16-A-0510
P.O. Box 618
Auburn, New York 13021
Plaintiff pro se

NYS Office of the Attorney General         CHI-HSIN E. ENGELHART, ESQ.
State Capitol
Albany, New York 12224
Attorneys for defendants

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Norman Croney, who, at all relevant times, was incarcerated at Clinton Correctional Facility and Marcy Correctional Facility, commenced this action on September 18, 2023.  *See* Dkt. No. 1 ("Compl.").  Presently before the undersigned is defendant Devyn Russell and defendant David Myatt's Motion for Summary Judgment

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56.  Plaintiff opposed.
*See* Dkt. No. 60.  Defendants replied.  *See* Dkt. No. 61.  For the reasons that follow, it is recommended that defendants' Motion for Summary Judgment be denied.

## II. **Legal Standards**

### A.  **Summary Judgment**

Fed. R. Civ. P. 56 instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, summary judgment cannot be granted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see also Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").  The party seeking summary judgment bears the burden of informing a court of the basis for its motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" to defeat summary judgment.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party may not rely on "mere conclusory

2

allegations, speculation, or conjecture," *Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" to support its claims, *Anderson*, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S 133, 150 (2000). The Court "may not make any credibility determinations or weigh the evidence." *Id.* Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a plaintiff proceeds pro se, the court must grant him "special solicitude," construe his submissions "liberally," and read such submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted) (citing *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)). This is because "a pro se litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if [ ] not afforded some degree of protection." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citing *Triestman*, 470 F.3d at 475). However, the Second Circuit has cautioned district courts that they "cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest." *Triestman*, 470 F.3d at 477 (citations omitted). Further, the "special solicitude" standard does not excuse "frivolous or vexatious filings by pro se litigants," nor does it "exempt a party from compliance with relevant rules of procedural and substantive law." *Id.*

3

## B. **N.D.N.Y. Local Rule 56.1**

N.D.N.Y. Local Rule 56.1 requires a party moving for summary judgment to file and serve a Statement of Material Facts "set[ting] forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." N.D.N.Y. L.R. 56.1(a). Where the opposing party is incarcerated and proceeding pro se, the moving party is required to notify the opposing party of the possible consequences of failing to respond to the motion. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d. Cir. 1996). The opposing party must then file a statement "admitting and/or denying each of the movant's assertions in matching numbered paragraphs." N.D.N.Y. L.R. 56.1(b). Each fact listed in the parties' statements must "set forth a specific citation to the record where the fact is established." *Id.*

Where a pro se litigant fails to respond to the movant's statement of material facts, and the pro se litigant has been notified of the possible consequences for failing to respond, the movant's facts may be deemed true to the extent that they are supported by evidence in the record. *See* N.D.N.Y. L.R. 56.1(b) ("The court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."). "Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have 'consented' to the legal arguments contained in that memorandum under Local Rule 56.1(b)." *Sullivan v. Snider*, 8:19-CV-0129 (GTS/DJS), 2021 WL 1294595, at *10 (N.D.N.Y. Apr. 7, 2021).[2]

---

[2] Except where otherwise noted, plaintiff has been provided copies of unpublished cases cited within this Report-Recommendation & Order.

"Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess [sic] facial merit, which has appropriately been characterized as a 'modest' burden." *Id.* at 10 (citing N.D.N.Y. L.R. 7.1(a)(3); then citing *Rusyniak v. Gensini*, No. 07-CV-0279 (GTS/GHL), 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct 30, 2009) (collecting cases); and then citing *Este-Green v. Astrue*, No. 09-CV-0722 (GTS/GHL), 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (collecting cases)).

However, failure to respond to a motion for summary judgment "does not, of course, mean that the motion is to be granted automatically." *Champion*, 76 F.3d at 486. The Court must assure itself of the movant's entitlement to summary judgment, regardless of whether the non-movant responded to the motion. *See, e.g., GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. May 6, 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions.").

## III. **Facts**

### A. **Noncompliance: N.D.N.Y. Local Rule 56.1**

Plaintiff has failed to comply with Local Rule 56.1, as his motion for summary judgment does not contain a Statement of Material Facts or cite to specific portions of the record which establish his factual assertions. *See* Dkt. No. 60.

The Local Rule provides: "[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." N.D.N.Y. L.R. 56.1. "This failure constitutes an independent basis on which the Court could deny

5

Plaintiff's motion. Although Plaintiff is a pro se litigant and the Court will 'make reasonable allowances to protect [him] from inadvertent forfeiture of important rights because of [his] lack of legal training,' *Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) (citation omitted), his pro se status does not relieve him of the "requirement to follow the procedural formalities of Local Rule [56.1(a)]," *McZorn v. Endicott Police Dep't*, No. 06-cv-33, 2008 WL 163581, at *2 (N.D.N.Y. Jan. 16, 2008). As plaintiff has been previously cautioned in this action, "[t]he Local Rules are not empty formalities . . . [they] serve to notify the parties of the factual support for their opponent's arguments . . . A party's failure to comply with these rules is fundamentally unfair to the opposing party." *Croney v. Russell*, No. 9:23-CV-1188 (DNH/PJE), 2025 WL 1089520, at *3 (N.D.N.Y. Feb. 25, 2025), *report and recommendation adopted*, No. 9:23-CV-1188, 2025 WL 854718 (N.D.N.Y. Mar. 19, 2025)[3] (citation omitted).

Here, although plaintiff filed opposition to defendants' motion for summary judgment, his four-page opposition, consisting of a two-page declaration and two pages of exhibits, does not set forth a statement of material facts nor does it respond to defendants' statement of material facts by "admitting and/or denying each of the movant's assertions in matching numbered paragraphs." N.D.N.Y. L.R. 56.1(b); *see* Dkt. No. 60. Plaintiff's opposition is a rehashing of his complaint. *See* Dkt. No. 60. Moreover, in his opposition, plaintiff does not point to evidence in the record to support any of the claims in his opposition. *See* N.D.N.Y. L.R. 56.1(b).[4]

---

[3] *See* Dkt. No. 50. The undersigned has not included a copy of this decision as plaintiff was served with a copy when the Court decided his motion for summary judgment.

[4] The Court provided plaintiff notice of his response deadline and of the consequences of failing to respond. *See* Dkt. No. 57. That notification stated that, for a response to the motion for summary judgment to be considered "proper," it must include:

    (1) A response to the defendants' statement of material facts that admits and/or denies each of the defendants' assertions in matching numbered paragraphs, and that supports

"Because Plaintiff did not comply with Local Rule 56.1(b), the facts set forth in Defendant[]s['] Rule 56.1 Statement of Material Facts that are supported by record evidence and are uncontroverted by nonconclusory allegations in Plaintiff's verified complaint and sworn opposition submission will be accepted as true." *Shabazz v. Bailey*, No. 9:20-CV-00057 (LEK/TWD), 2023 WL 5779533, at *4 (N.D.N.Y. June 28, 2023), *report and recommendation adopted*, No. 9:20-CV-57 (LEK/TWD), 2023 WL 5622049 (N.D.N.Y. Aug. 31, 2023), *aff'd*, No. 23-7252, 2025 WL 272602 (2d Cir. Jan. 23, 2025)(citing, *inter alia*, *McAllister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *3 (N.D.N.Y. Oct. 29, 2014) (finding allegations in the plaintiff's verified complaint sufficient to controvert facts in statement of material facts on motion for summary judgment); *White v. Mielnicki*, No. 9:21-CV-0791 (AMN/TWD), 2025 WL 2933212, at *4 (N.D.N.Y. Aug. 27, 2025), *report and recommendation adopted*, 2025 WL 2775921 (Sep. 30, 2025) (quoting *McCallister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *3 (N.D.N.Y. Oct. 29, 2014) ("As such, balancing plaintiff's insufficient response with his pro se status, the Court will "accept as true" "the facts set forth in

---

each denial with citations to record evidence; (2) Copies of all record evidence that you cite in your response to the defendants' statement of material fact; and (3) A response memorandum of law . . . that responds to each of the legal arguments contained in the defendants' memorandum of law, and that contains any additional legal arguments you may have in response to the defendants' motion for summary judgment.

*Id.* at 2.  The notification further alerted plaintiff:

WARNING: if you do not submit a proper response to the defendants' statement of material facts, the Court may deem you to have admitted the defendants' factual statements.  If you do not submit copies of record evidence in support of your denials, the Court may deem defendants' factual statements to be true.  If you do not submit a proper response memorandum of law, the Court may deem you to have conceded the defendants' arguments.  If you do not respond to this motion properly (or at all), summary judgment may be entered against you, meaning that SOME OR ALL OF YOUR CLAIMS MAY BE DISMISSED.

*Id.*

defendant's Rule 56.1 statement of material facts to the extent such facts are supported by record evidence and uncontroverted by nonconclusory allegations in plaintiff's verified complaint . . . [.]")).  The Court will also review the record for "any genuine disputes of material fact [which would] preclud[e] summary judgment."  *Cade v. Hart*, No. 9:22-CV-00751 (ECC/PJE), 2025 WL 2324129, at *4 (citing *Holtz v. Rockerfeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBI Fin. Svcs., Inc.*, 557 U.S. 167 (2009)).

## B. **Facts**[5]

Plaintiff was incarcerated at Clinton Correctional Facility from February 28, 2023, to March 21, 2023.  *See* Dkt. No. 55-34 at 3 (citing Dkt. No. 55-13).  He was transferred to Marcy Correctional Facility on March 21, 2023, where he remained in the Marcy R.M.H.U. until April 30, 2024.  *See id.*; Dkt. No. 55-13 at 4.  Defendants, citing plaintiff's complaint, provide that on March 20, 2023, plaintiff's property was packed into three draft bags.  *See* Dkt. No. 55-34 at 3 (citing Compl. at 4).  Plaintiff contended that on that same day, he received mail from "multiple lawyers."  *Id.* (quoting Compl. at 4).  On March 21, 2023, "as Plaintiff was being brought from his cell to be processed for the transfer, Plaintiff became agitated and demanded the above-mentioned unpacked mail be handled differently."  *Id.*  Myatt told plaintiff that "another officer will put it in a bag and carry it onto the bus and instructed Plaintiff to tell the officers processing his transfer about the unpacked mail." *Id.* at 3-4.

---

[5] As the undersigned has decided this motion on the issue of exhaustion, the facts section contains only those facts and allegations needed to provide a background to plaintiff's allegations underlying the complaint.

Plaintiff arrived in the draft room, set in the gymnasium area, and informed defendant Russell about his unpacked mail.  *See* Dkt. No. 55-34 at 4 (citing Compl. at 5, Dkt. No. 55-2 at 38).  Officer Russell took the mail out of the bag it was in to inspect it for contraband and put it into a different paper bag, without reading the papers.  *See id.* at 4.  Russell told plaintiff the papers would travel with an officer on the bus.  *See id.* (citing Dkt. No. 55-2 at 33, 72-73).  Plaintiff became agitated and aggressive.  *See id.* (citing Dkt. No. 55-2 at 33, 73).  Plaintiff expressed that his mail should be treated like "regular property."  *Id.*  Defendants assert that while removing plaintiff's restraints to prepare to strip frisk him, plaintiff punched Russell "about" his mouth several times and bit Russell's finger, and Russell and other officers had to exercise reasonable force to subdue plaintiff and reapply the restraints. Dkt. No. 55-28 at ¶¶ 8-10.

Defendants provide that plaintiff was then brought to the facility hospital where he was strip frisked in preparation for his transfer.  *See* Dkt. No. 55-35 at 5.  The strip frisk recovered contraband, a lighter, from plaintiff's sock.  *See id.* (quoting Dkt. No. 55-24 at ¶5).  Defendants provide that plaintiff reported no injuries and sought no follow-up care. *See* Dkt. No. 55-4 at 5; Dkt. No. 55-2 at 53.

By contrast, plaintiff contends that when he expressed his opinion to Russell that his mail should be treated "like regular property," Russell told plaintiff to shut up, choked him, and repeatedly punched plaintiff in the face.  Dkt. No. 55-34 at 4.  Then multiple officers began punching plaintiff "everywhere."  *Id.*  Plaintiff asserts that he did not comply with direct orders to put his hands behind his back because he was trying to block the attack.  *See id.*  Plaintiff contends that he did not punch or put his hands on any of the officers.  *See* Dkt. No. 55-2 at 37, 40, 48.

Plaintiff asserts that, while he was handcuffed at the facility hospital, Myatt "started throwing multiple punches" to plaintiff's face and ribs and put a plastic bag over plaintiff's face while assaulting him. *See* Dkt. No. 60 at 2. Plaintiff avers that he did not report any injury to the facility nurse on that day because Myatt threatened his life if he reported any injuries. *See* Dkt. No. 55-2 at 50-51. Plaintiff contends that he never received his legal mail that was placed in the separate bag. *See* Dkt. No. 60 at 2; Compl. at 7.

## IV. **Arguments**

Defendants first argue that plaintiff failed to exhaust his administrative remedies with respect to his excessive force, retaliation, and property claims. *See* Dkt. No. 55-3 at 9. They argue that "[t]o the extent that Plaintiff's prior filings [submitted in support of his motion for summary judgment, dkt. no. 37 at 7-9], could be construed as a copy of any purported grievance . . . neither Marcy IGRC nor COR[C] have any records of this grievance being filed, much less being appealed." *Id.* at 10.[6] Defendants contend that plaintiff's claim at his deposition that he reported the alleged incidents of excessive force to "the deputy superintendent of mental health," that is not "the proper party to address any grievance concerns." *Id.* at 11. Finally, defendants argue that plaintiff has not argued that administrative remedies were unavailable to him and to the extent plaintiff's "specul[ation]" that the mailbox was "not secure" may be why his grievance was never received, plaintiff testified that he "'can't say anybody intercepted [his] grievances'" and other unrelated grievances plaintiff filed at Marcy and mail plaintiff sent were received. *Id.*

---

[6] Plaintiff did not submit these purported grievances in opposition to defendants' motion for summary judgment, but in support of his motion for summary judgment.

10

Defendants next argue that plaintiff's First, Fourth, and Eighth Amendment claims against Myatt should be dismissed for lack of personal involvement. *See* Dkt. No. 55-34 at 12. They assert that plaintiff claimed that Myatt was not present during the excessive force incident. *See* Dkt. No. 55-34 at 13. As to his allegations of excessive force at the facility hospital, defendants contend that the video footage, along with Myatt's testimony, demonstrates that he was not in the same room as plaintiff. *See id.* Further, defendants point out that plaintiff testified that he named Myatt as a defendant because he was the area supervisor, but he was unable to provide any physical description for Myatt. *See id.*

Next, defendants argue that plaintiff's First Amendment retaliation claims against Myatt and Russell must be dismissed because plaintiff did not engage in protected activity. *See* Dkt. No. 55-34 at 14. They assert that plaintiff's expression of dissatisfaction with how his mail was being transported was not protected conduct. *See id.* at 16. Further, defendants assert that plaintiff failed to demonstrate a causal connection between any allegedly-protected activity and the alleged retaliation. *See id.* at 17-18.

Defendants contend that plaintiff's Fourth Amendment claim should be dismissed because there exists no reasonable expectation of privacy in prison and because plaintiff conceded that defendant Russell did not read his mail but inspected it for contraband, making the intrusion reasonable. *See* Dkt. No. 55-34 at 19-20.

Defendants next argue that plaintiff's Eighth Amendment claim against defendant Russell must be dismissed because his use of force was necessary and *de minimis* under the circumstances. *See* Dkt. No. 55-34 at 20. They argue that the evidence they

presented of Russell's injuries contradicts plaintiff's allegations that he never "physically assaulted or even touched the involved Corrections Officers." Dkt. No. 55-34 at 21. Further, defendants aver, "the record evidence shows that Plaintiff sustained, at most, a minor abrasion with bruising and swelling about his forehead and welts on his arm for which he did not require any follow-up medical treatment." *Id.* at 23. Defendants also point out that plaintiff has "change[d] the narrative" on multiple occasions as to when plaintiff contends "the use of force ceased," first stating at his disciplinary hearing in March 2023 that force was used "from the barber shop all the way to medical." *Id.* at 25. Once plaintiff's counsel was provided with a copy of the video of the escort which "definitively disproves that account[,]" plaintiff "stopped alleging that the force continued 'all the way to medical'" in his "subsequent spontaneous accounts." *Id.* As to plaintiff's "purported grievance paperwork"; complaint; November 19, 2023, statement to the Office of Special Investigations; and June 2024 Motion for Summary Judgment, defendants assert that "none of them mention any use of force between him being handcuffed in the draft room and reaching the facility hospital." *Id.* Yet, during his January 2025 deposition, "plaintiff conveniently change (sic) the narrative once again, this time offering, unprompted, that he was actually assaulted only until the facility camera began rather than 'all the way to medical.'" *Id.* Lastly, defendants argue that they are entitled to qualified immunity on all claims. *See* Dkt. No. 55-4 at 27-28.

Plaintiff's opposition does not directly address any of the arguments defendants raise in the motion for summary judgment. *See* Dkt. No. 60.

In reply, defendants argue that their statement of material facts should be admitted in its entirety under N.D.N.Y. Local Rule 56.1(b). *See* Dkt. No. 61 at 3. They

argue that their arguments should be deemed conceded because plaintiff did not respond, or sufficiently respond, to their arguments regarding exhaustion, their personal involvement arguments regarding Myatt, his Fourth Amendment claim, or their allegations that plaintiff struck and bit Russell, Russell sustained significant injuries, and that contraband was recovered on plaintiff's person. *See id.* at 4-6. Finally, defendants assert that an evidentiary hearing is not warranted as to the issue of exhaustion because plaintiff "did not raise any genuine dispute of material facts with respect to his failure to properly exhaust his administrative remedies prior to commencing this action[.]" *Id.* at 6.

## V. **Discussion**

### A. **Exhaustion Standards**

The Prison Litigation Reform Act ("PLRA") requires that an incarcerated individual must exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Woodford v. Ngo*, 548 U.S. 81 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. *See id.* at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or

she is incarcerated.  *See Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation omitted).

New York State affords state prison inmates the opportunity to seek redress of complaints regarding prison conditions through a three-tiered grievance procedure called the Inmate Grievance Program ("IGP").   *See* N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, §§ 701.1, 701.5.  First, the inmate must file a complaint with an inmate grievance program clerk within twenty-one days of the alleged incident.[7]  *See id.* § 701.5(a)(1).  The inmate is able to request, in writing, an extension to file a grievance on the basis of "mitigating circumstances" as long as the request is submitted within forty-five days of the alleged occurrence. 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a).  An IGP representative has sixteen calendar days to informally resolve the issue.  *See id.* § 701.5(b)(1).  If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing.  *See id.* §§ 701.5(b)(2)(i)-(ii).  If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility Superintendent within seven calendar days of receipt of the determination.  *See id.* § 701.5(c)(1).  Generally, the Superintendent has twenty calendar days from receipt of the appeal to render a decision.  *See id.* § 701.5(c).

If the Superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the Superintendent's determination.  *See* & N.Y.C.R.R. §§ 701.5(d)(i)-(ii).  CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the

---

[7]  "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility."  7 N.Y.C.R.R. § 701.5(a)(1).

[inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." *Id.* § 701.5(d)(3)(ii).

Each step of the IGP process requires that a decision be rendered within a specified time period. *See* 7 N.Y.C.R.R. § 701.5. With a harassment grievance,[8] there is an expedited schedule. Harassment grievances are still to be filed with the IGP clerk who must forward it to the Superintendent by the close of the business day to determine whether the complaint is properly considered a harassment claim. If the Superintendent does not consider it to be a "bona fide harassment claim," it is returned to the IGRC and handled like all other grievances. 7 N.Y.C.R.R. § 701.8(c). If the Superintendent determines it is a "bona fide" harassment issue, an investigation is initiated. *Id.*; 7 N.Y.C.R.R. § 701.8(d)(1)-(3). The Superintendent "will render a decision on the grievance" within twenty-five calendar days of receipt. *Id.* at § 701.8(f). Should the Superintendent fail to respond within the twenty-five day time frame, "the [inmate] may appeal his/her grievance to CORC" by "filing a notice of decision to appeal [] with the inmate grievance clerk." *Id.* at § 701.8(g). If the inmate receives the Superintendent's response and "wishes to appeal the superintendent's response to CORC, he/she must file a notice of decision to appeal [] with the inmate grievance clerk within seven calendar days of receipt of that response." *Id.* at § 701.8(h). With both the regular grievance procedure and the expedited harassment procedure, if there is lack of timely response, an inmate must appeal "to the next step." *Id.* at § 701.6(g)(1)(b)(ii)(2); *see also Eleby v. Smith*, No. 9:15-CV-0281 (TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y.

---

[8] Harassment grievances are based on "employee conduct meant to annoy, intimidate, or harm an inmate. These grievances go directly to a superintendent." *Dabney v. Pegano*, 604 F.App'x 1, 3 (2d Cir. 2015) (summary order).

Jan. 9, 2017), *report and recommendation adopted*, No. 9:15-CV-00281 (TJM/DEP), 2017 WL 979040 (N.D.N.Y. Mar. 13, 2017); *Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal . . . can—and must—be appealed to the next level, including CORC, to complete the grievance process.") (citing 7 N.Y.C.R.R. § 701.6(g)).

Although the Supreme Court of the United States has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). In *Ross v. Blake*, the Supreme Court held in that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." *Ross v. Blake*, 578 U.S. 632, 635 (2016). Although *Ross* eliminated the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." *Ross*, 879 U.S. at 637. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. *Id.* The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. *Id.* at 633. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (citing *Booth v. Churner*, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Lastly, administrative remedies are unavailable where "prison

administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

"[T]he defendants have the burden of proving that [the plaintiff's] claim has not been exhausted[.]" *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).  A defendant satisfies this burden by "establishing . . . that a grievance process exists," and that the plaintiff failed to use the grievance procedure. *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (citing *Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003), then citing *Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir. 1999)).  "[O]nce a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable." *Coleman v. Nolan*, No. 9:15-CV-40 (ATB), 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (citing *Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013).  As such, "'the burden of production' may shift to a plaintiff when a court considers whether the grievance process was unavailable[.]" *Id.* (citing *Kelly*, 985 F.Supp. 2d at 284).

Generally, if it is found that the inmate has not exhausted all available administrative remedies, his or her case should be dismissed without prejudice unless the time for permitting administrative remedies has expired. *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 560 F.3d 118, 124 (2d Cir. 2009) (citation omitted); *see Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2003) (amended 2004) (quoting *Snider v. Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999)).  DOCCS is required to maintain grievance files for the current calendar year and the previous four calendar

years whenever an incarcerated individual appeals a grievance to CORC.  *See* 7 N.Y.C.R.R. § 701.6(k)(3).

### B.  **Did Plaintiff Exhaust his Administrative Remedies?**

The undisputed facts demonstrate that plaintiff failed to fully and properly exhaust his administrative remedies.  The record before the Court indicates that Marcy had a fully-functioning grievance program during the relevant time period, and plaintiff failed to file any grievances relating to the alleged excessive force incidents or property claims. Defendants submit a declaration from Rachael Seguin, Director of the Incarcerated Grievance Program.  *See* Dkt. No. 55-19.  Ms. Seguin declared that all incarcerated persons are instructed on using the grievance process and "advised of" Directive #4040 during orientation.  *See id.* at 2.  Further, she declared that Directive #4040 was available in every facility's Law Library and Grievance Office during all relevant times. *See id.*   Ms. Seguin declared that Marcy had, at all relevant times, a fully functioning grievance process that was available to incarcerated individuals. *See id.* at 4.  Ms. Seguin conducted "a diligent search of CORC records for any grievance appeals filed by Plaintiff relating to Plaintiff's allegations in this action."  *Id.*; Dkt. No. 55-20.  Based on that search, plaintiff did not appeal any grievances to CORC about the relevant incidents while housed at Marcy.  *See* Dkt. No. 55-19.

Similarly, defendants submitted the declaration of Brayden Hemming, Office Assistant at Marcy "assisting in Accreditation, Program Committee, Internal Controls, and the Incarcerated Grievance Program."  Dkt. No. 55-13.  Mr. Hemming conducted "a diligent search of DOCCS records for any grievances filed by Plaintiff relating to Plaintiff's allegations in this action."  *Id.* at 4-5.  Plaintiff filed four grievances while

incarcerated at Marcy, in March and April 2023, unrelated to the incidents underlying this complaint. *See id.* at 5; Dkt. Nos. 55-15, 55-16, 55-17. Mr. Hemming indicates that his search also revealed "that Marcy's grievance office did not receive any written correspondence from Plaintiff concerning his allegations in this matter." *Id.*[9] The search did not reveal any records showing that

> Plaintiff ever followed up with the IGRC Office about a missing grievance relating to the above allegations. Had Plaintiff done so, the IGRC Office would have informed him that it did not receive any grievances related to the above allegations, asked him to resubmit, and worked with him on getting the grievances filed and/or obtaining extensions to do so.

*Id.*

Plaintiff does not address exhaustion in his complaint or his opposition to the Motion for Summary Judgment. In his opposition, he states that he reported the "misconduct" to the Office of Special Investigation on March 22, 2023, and a "Sgt." Dkt. No. 60 at 2. Plaintiff testified at his deposition that he is familiar with the grievance process and had previously followed all three steps of the grievance process while housed at a different facility. *See* Dkt. No. 55-2 at 19-20, 58-59; Dkt. No. 55-2 at 17, 19.[10] Plaintiff testified that he filed a grievance regarding the incident while at Marcy R.M.H.U. *See id.* at 55. He says he "wrote my name and stuff on the envelope," but that at Marcy R.M.H.U. "they don't have a separate box designated for grievances. And then the mailbox at the time when I was there was unlocked." *Id.* Plaintiff testified, "I can't say anybody intercepted my grievances. All I can say is that it was not secure."

---

[9]  Mr. Hemming provided, for inmates "incarcerated in an RMHU, grievances were collected along with regular mail and sorted in the mail room to be forwarded to the IGRC Office. Once a grievance arrives at the IGRC Office, it is designated with a code and grievance number, logged into a logbook, and entered into the computer. A receipt is then sent to the grievant informing them as such." Dkt. No. 55-13 at 4.
[10]  Citations to plaintiff's deposition transcript refer to the pagination of the original document, located at the top right-hand corner of the page.

*Id.* Plaintiff contends that his grievance was never answered. *See id.* at 58. Plaintiff testified that he reported the lack of response to the "deputy superintendent of mental health about the grievance because the grievance supervisor was not doing the rounds" who told him, "you need to go to the next process." *Id.* at 59. He testified that he "appealed all the way to C.O.R.C." *Id.* After sixteen days passed with no answer, he "went to the superintendent" "before seven days was up after the grievance sixteen." *Id.* at 60. Plaintiff testified, "after the sixteen days was up, I spoke to the  -- deputy superintendent of mental health" "because it was her time now to handle the grievance." *Id.* The Deputy Superintendent said, "I'll check into it." *Id.* Plaintiff stated that he appealed to CORC by sending a "letter" or "a form that you write out to appeal." *Id.*

Here, defendants have demonstrated that plaintiff has not exhausted his administrative remedies. Whereas plaintiff testified in his deposition that he submitted his grievance, received no response, and appealed to the Superintendent and then to CORC, defendants have submitted declarations from the IGRC supervisor and a Marcy employee who both testified that there existed a fully-functioning grievance program at Marcy at all relevant times. *See* Dkt. Nos. 55-13, 55-19. They further testified to performing a search of their relevant records and finding no evidence that plaintiff filed a grievance about the incidents of March 21, 2023, or appealed to CORC. *See generally Foskey v. Paige*, No. 9:20-CV-0504 (LEK/TWD), 2024 WL 2880715, at *7 (N.D.N.Y. Mar. 4, 2024), *report and recommendation adopted*, No. 9:20-CV-504 (LEK/TWD), 2024 WL 2109150 (N.D.N.Y. May 10, 2024) ("While Plaintiff testified he drafted a response to the superintendent's denial of grievance WSH7781-19, signed it, and placed it his SHU cell door, . . . both Washington IGP office and CORC records revealed no appeal was

20

received.  Therefore, the Court finds Plaintiff failed to exhaust his administrative remedies under the DOCCS IGP prior to commencing this action."); *see also Place v. Vespa*, No. 22-CV-6356 CJS-MJP, 2025 WL 3003720, at *8 (W.D.N.Y. Oct. 27, 2025) (finding the defendants met initial burden of proving failure to exhaust where they submitted sworn affidavits indicating that the plaintiff "completely failed to utilize the established DOCCS inmate grievance procedures, since there is no evidence he ever filed any grievances or appeals concerning the alleged assault" by the defendants).

### C.  **Were Administrative Remedies Available to Plaintiff?**

Plaintiff testified in his deposition that some "facilities" are "violating the grievance process" by not giving incarcerated persons "a separate box designated for grievances." Dkt. No. 55-2 at 18.  Plaintiff also testified, generally, about the grievance process as he experienced it during his eleven years of incarceration, stating, "a lot of my grievances go unanswered," referring to a grievance regarding attendance at religious services at an unspecified correctional facility that "has just been fixed" despite not having it fixed through the grievance procedure.  *Id.* at 19.  He testified that of all of the grievances he has ever filed while incarcerated, he received a response from CORC once.  *See id.* at 22.  Specific to Marcy, plaintiff testified that he put his grievance into a mailbox at Marcy R.M.H.U. but that the mailbox was not secure.  *See id.*  He does not assert that his mail was diverted or that any specific officer was responsible for so diverting.  He submitted copies of the alleged grievance and appeals to this Court along with his Motion for Summary Judgment.  *See* Dkt. No. 37 at 7-9.[11]

---

[11]  Plaintiff also submitted a purported copy of a Tier 3 misbehavior hearing appeal. However, the appeal of a misbehaver report would not serve to exhaust his administrative remedies on a grievance.  *See* Dkt. No. 37 at 10.

Courts have held that generalized claims of grievances being lost or destroyed does not suffice to excuse the exhaustion requirement. *See Foskey v. Paige*, No. 9:20-CV-0504 (LEK/TWD), 2024 WL 2880715, at *8 (N.D.N.Y. Mar. 4, 2024), *report and recommendation adopted*, No. 9:20-CV-504 (LEK/TWD), 2024 WL 2109150 (N.D.N.Y. May 10, 2024) (citing cases). However, that does not necessarily end the assessment. Although plaintiff has not submitted any statement in his complaint or in association with the pending motion stating that he exhausted his administrative remedies or that they were unavailable, he did swear under penalty of perjury at his deposition that he filed a grievance and appealed each nonresponse to the next level and referred to submitting copies of those grievances with his earlier motion for summary judgment. *Cf. Smith v. Dodge*, No. 9:18-CV-01066 (MAD/TWD), 2022 WL 19771697, at *9 (N.D.N.Y. Jan. 19, 2022), *report and recommendation adopted*, No. 9:18-CV-01066 (MAD/TWD), 2023 WL 2986826 (N.D.N.Y. Apr. 18, 2023) (citing *Hudson v. Kirkey*, No. 9:20-CV-0581 (LEK/DJS), 2021 WL 1966721, at *4 (N.D.N.Y. May 17, 2021) ("In applying *Williams*, this Court has held that it is sufficient for a plaintiff to "submit [ ] a sworn statement that he gave his grievance to a correction officer," and the plaintiff is "not then required to produce a greater amount of evidence than normally required of a non-movant at the summary judgment stage.")). Plaintiff also testified that he asked the Superintendent of Marcy R.M.H.U. about the status of his grievance. Although this conversation does not serve to satisfy any exhaustion of any remedies, it does show an attempt to follow up when his grievance allegedly went unfiled and unanswered.

> [T]his Court has granted a defendant's motion for summary judgment where the plaintiff testified during a "deposition that he filed a grievance by leaving a plain envelope addressed to the grievance committee for the mail personnel to collect," but did not submit documentary evidence to support

the contention and did not verbally follow up with anyone at the prison about the grievance.

*Dodge*, 2022 WL 19771697, at *10 (quoting *Ozzborn v. Cornell*, 9:17-CV-1039 (MAD/ATB), 2021 WL 2227829, at *4-5 (N.D.N.Y. June 2, 2021)); then citing *Sankara v. Montgomery*, No. 9:16-CV-00885 (FJS/TWD), 2018 WL 4610686, at *8 (N.D.N.Y. June 25, 2018), *report and recommendation adopted*, 2018 WL 3408135 (N.D.N.Y. July 13, 2018) ("finding the plaintiff's exhaustion claim insufficient where the plaintiff "provided no evidence that he actually did write grievances; when they were written; the content of the grievances . . . the officers named in the grievance(s) . . . ; the specific steps taken by [the plaintiff] to provide them to an officer to send to the grievance office; and any specific follow up with the grievance office[.]"").

Although defendants reference plaintiff's successful use of Marcy's grievance system with respect to other, unrelated grievances, plaintiff filed at the same time to support their argument that administrative remedies must have been available to plaintiff, the undersigned observes that those grievances do not appear to involve allegations of assault. *Cf. Bradshaw v. Piccolo*, 772 F. Supp. 3d 331, 345 (W.D.N.Y. 2025) (rejecting the plaintiff's allegations that prison administrators thwarted his efforts to file grievances as the plaintiff appealed several other grievances to CORC, including several allegations of assault by staff, during the time period of alleged unavailability); *see also Dodge*, 2022 WL 19771697, at *10 (N.D.N.Y. Jan. 19, 2022) (rejecting the defendants' argument that the plaintiff knew how to use the grievance program and he filed eight grievances while in the SHU at Great Meadow, made to bolster their argument that the plaintiff likely did not exhaust the assault complaint in question, concluding it did "not ring true" that the plaintiff would file grievances about minor issues

23

"but not file a grievance regarding an assault which caused injuries requiring hospital treatment").  Further, this argument may go to plaintiff's credibility, but it does not necessarily eliminate a material question of fact about availability given the specific facts presented here.

Many courts in this Circuit have been hesitant to grant summary judgment for failure to exhaust without first holding an exhaustion hearing when the plaintiff (1) contends that he submitted his grievance, (2) contends that the grievance went unanswered and unfiled, (3) contends that he appealed to the Superintendent and CORC, but received no response, (4) indicated that his mail could have been intercepted, and (5) submitted copies of purported grievances and appeals, concluding that availability of administrative remedies hinges on a credibility determination that cannot be made on summary judgment.  *See, e.g.*, *Place*, 2025 WL 3003720, at *8[12] (noting that although the plaintiff "has not specifically controverted" affidavits the defendant submitted stating that there was no evidence the plaintiff filed grievances or appeals about the subject conduct, the court held that there existed a triable issue of fact due to the plaintiff's sworn deposition testimony that he did attempt to file grievances but there were availability questions); *see also Thaxton v. Simmons*, No. 10-CV-1318, 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether [p]laintiff never filed his initial grievance on April 29, as [d]efendants claim, or that, as [p]laintiff claims, he filed a timely grievance that was lost or tampered with by [d]efendants. Such credibility assessments are to be resolved by a trier of fact."); *see generally Colson v. Mingo*, No. 18 Civ. 2765 (JGLC), 2024 WL 1018582, at *8-9

---

[12]  The undersigned cites this case here as an example of the Court relying on the plaintiff's deposition testimony to concede that there existed a triable issue of fact as to exhaustion and availability.

24

(S.D.N.Y. Mar. 8, 2024) (denying summary judgment as to whether the plaintiff exhausted his excessive force by staff claim where the plaintiff asserted he filed a grievance but the prison argued it never received it).  "This is not a case where a plaintiff provided absolutely no evidence to support his contentions."  *Funches v. Miller*, No. 9:20-CV-676 (MAD/CFH), 2023 WL 2864818, at *13 (N.D.N.Y. Jan. 3, 2023), *report and recommendation adopted*, No. 9:20-CV-00676 (MAD/CFH), 2023 WL 2495832 (N.D.N.Y. Mar. 14, 2023).

Accordingly, it is recommended that defendants' motion for summary judgment be denied and that the Court hold an exhaustion hearing.  It is recommended that the denial be with leave to renew following the hearing.  "Since the Court is required to draw reasonable inferences in Plaintiff's favor, the Court must infer that the grievance was never filed because prison authorities did not file it, not because Plaintiff did not submit it." *McLean v. LaClair*, No. 9:19-CV-1227 (LEK/ATB), 2021 WL 671650, at *8 (N.D.N.Y. Feb. 22, 2021); *Fann v. Graham*, No. 15-CV-1339 (DNH/CFH), 2018 WL 1399331, at *6 (N.D.N.Y. Jan. 11, 2018) ("Viewing the facts in the light most favorable to plaintiff, the record suggests that plaintiff's grievances were submitted, but were unfiled and unanswered, creating an issue of fact as to whether the grievance process was available and whether plaintiff attempted to exhaust his administrative remedies[.]"), *report and recommendation adopted*, 2018 WL 1399340 (N.D.N.Y. Mar. 19, 2018); *Thaxton*, 2013 WL 4806457, at *4 ("[A] question of fact exists as to whether [p]laintiff never filed his initial grievance on April 29, as [d]efendants claim, or that, as [p]laintiff claims, he filed a timely grievance that was lost or tampered with by [d]efendants. Such credibility assessments are to be resolved by a trier of fact."); *see also Woodward v.*

25

*Lytle*, No. 9:16-CV-1174 (NAM/DEP), 2018 WL 4643036, at *4-5 (N.D.N.Y. Sept. 27, 2018) (finding an issue of fact as to the availability of the grievance process where the plaintiff drafted and submitted a grievance that was never filed or answered) (collecting cases).

As to defendants' arguments on the merits of plaintiff's claims, "[t]he Court need not address" them "because summary judgment is being recommended based upon Plaintiff's failure to exhaust administrative remedies." *Deans v. Green*, No. 9:24-CV-00374 (BKS/TWD), 2025 WL 4081222, at *8 (N.D.N.Y. Dec. 8, 2025), *report and recommendation adopted*, No. 9:24-CV-374 (BKS/TWD), 2026 WL 196557 (N.D.N.Y. Jan. 26, 2026) (citing *Donald v. Leonard*, No. 9:22-CV-793 (BKS/PJE), 2025 WL 2933340, at *12 (N.D.N.Y. Feb. 25, 2025), *report and recommendation adopted*, 2025 WL 2582802 (N.D.N.Y. Sept. 8, 2025)).

## VI.  **Conclusion**

Wherefore, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that defendants' Motion for Summary Judgment, dkt. no. 55, be **DENIED**, that an exhaustion hearing be held, and that the denial be without prejudice and with leave to renew following the exhaustion hearing; and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.  *See Roldan v. Racette*, 984 F.2d 85,

89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[13]

        Dated: February 17, 2026
            Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge

---

[13] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal federal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal federal holiday. *See id.* § 6(a)(1)(c).

27